The People *ex rel.* Town of Cicero

*v.*

Philip Knopf, County Clerk.

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

Taxes—*act of 1897 does not limit tax rate of town of Cicero to two per cent.* The act of 1897, (Laws of 1897, p. 93,) providing that cities, towns and villages, whether under general law or special charters, shall levy and collect taxes in the manner "and shall have power to assess and collect them at the rate" provided for in the general law imposing the two per cent limit, does not repeal the special charter provision of the town of Cicero authorizing the levy of town taxes without limitation as to the amount.

Appeal from the Circuit Court of Cook county; the Hon. R. W. Clifford, Judge, presiding.

This is a petition by the People, on the relation of the town of Cicero, filed at the December term, 1899, of the Cook county circuit court, for a writ of *mandamus* to compel appellee, as county clerk, to extend the taxes of said town for the years 1899 and 1900 at a rate in excess of two per cent of the value of its taxable property. It is alleged that the town of Cicero is a municipal corporation, acting and existing under a special charter granted by the legislature in 1869; that said charter contains no limitation as to the amount of taxes which may be levied or collected for town purposes; that the town, by ordinance, regularly appropriated $160,000 for town purposes, being more than two per cent of the value of the taxable property of the town; that the taxable real and personal property of the town, as equalized, for the year 1899, amounts to the sum of $6,377,958; that it was the duty of the county clerk to extend the sum appropriated, as a tax upon the property of the town, but he refused to do so, claiming that by reason of "An act to amend 'An act in regard to the assessment and collection of municipal taxes, approved May 23, 1877,' approved June 11, 1897, in force July 1, 1897," the charter of the town of

Cicero was abrogated in so far as it authorized the levy of an assessment of taxes in excess of two per cent. The prayer is that the county clerk be directed to ascertain and levy a tax rate sufficient to raise the sum of $160,000. To this petition appellee filed a demurrer, which was sustained by the court and the petition was dismissed. The town of Cicero brings the cause to this court upon appeal.

A. J. Redmond, (Avery R. Hayes, of counsel,) for appellant.

Julius A. Johnson, County Attorney, and Frank L. Shepard, for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

Section 8 of the special charter of the town of Cicero is as follows: "The board of trustees may from time to time appropriate so much money as they may deem necessary for the purpose of making the improvements which they are authorized by this act to make; and also so much money as they shall deem necessary for the purpose of paying the salaries and fees of the officers of said town, and for carrying out their orders, by-laws, resolutions or ordinances, and the provisions of this act. And all amounts of money appropriated shall be deemed a tax on the taxable property of said town. * * * And said clerk of said county shall include the total amount of the sums of money so certified to him under the head of 'Town Tax' in the next general warrant issued by him for the collection of State and county taxes in said town of Cicero."

Section 1 of article 8 of the City and Village act, as amended in 1879, (Laws of 1879, p. 66,) is as follows: "The city council in cities, and boards of trustees in villages, may levy and collect taxes for corporate purposes in the manner following: * * * *Provided,* the aggregate amount of taxes levied for any one year, exclusive

of the amount levied for the payment of bonded indebtedness or the interest thereon, shall not exceed the rate of two ·percentum upon the aggregate valuation of all property within such city or village, subject to taxation therein, as the same was equalized for State and county taxes of the preceding year."

By an act of the legislature approved May 23, 1877, (Laws of 1877, p. 61,) it was provided: "That all cities, villages, and incorporated towns, in this State, whether organized under the general law or special charters, shall assess and collect their taxes in the manner provided for in article eight (8) of the act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, and in the manner provided for in the general revenue laws of this State; and all acts, or parts of acts, inconsistent with the provisions of this act, are hereby repealed."

In the case of *Town of Cicero* v. *McCarthy*, 172 Ill. 279, it was contended by the latter that this act was a limitation upon the power of the authorities in the town of Cicero to levy a tax in excess of the two per cent limited by the proviso in article 8 of the City and Village act, *supra*, but we there held otherwise. Subsequently, in 1897, (Laws of 1897, p. 93,) the legislature amended the act of 1877, again providing that "all cities, villages and incorporated towns in this State, whether organized under a general law or special charters, shall assess and collect their taxes in the manner," and, adding the words, "and shall have power to assess and collect them at the rate provided for in article 8," etc., concluding with the same language used in the act of 1877. That is to say, the only difference between the acts of 1877 and 1897 is the added words, "and shall have power to assess and collect them at the rate." The theory of the petition is that these additional words take away the unlimited power of the town of Cicero as to the rate of taxation,— in other words, that the provisions of the special charter

in that respect are inconsistent with this act and the former is thereby repealed.

There is no express repeal of the special charter, unless it can be said that its provisions are so inconsistent with the amendatory act as that the two cannot stand together. The same rules of construction must therefore be applied in determining whether the former act is repealed by the latter as are applicable in determining whether one statute is repealed by another by implication, and so the question must be, are the two acts so irreconcilably in conflict with each other that both can not stand. On the contrary, if they are susceptible of a construction which will render them consistent with each other, then there is no repeal of the special act.

It will be noticed that the language of the act of 1897 is affirmative and in no sense negative: "All cities, villages * * * shall have power to assess and collect them [taxes] at the rate provided for in article 8." It does not say all cities, villages and incorporated towns shall have power to assess only at that rate, nor that they shall assess no greater rate. The town of Cicero had power, without this statute, to assess and collect two per cent or more, and the question is, does this affirmative language take away that pre-existing power. We think not. "In regard to the mode in which laws may be repealed by subsequent legislation, it is laid down as a rule that a general statute, without negative words, will not repeal the particular provisions of a former one unless the two acts are irreconcilably inconsistent. * * * The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject and he has acted upon it, a subsequent statute in general terms or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intending to affect the more particular or positive previous provisions unless it is absolutely necessary to give the latter act such a construc-

tion, in order that its words shall have any meaning at all." (Sedgwick on Stat. and Const. Law, p. 123.) And again the same author says (p. 127): "So in this country, on the same principle, it has been said that laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject, and it is therefore but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter unless the repugnancy between the two is irreconcilable, and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law if the two acts may well subsist together." (See, also, *Covington* v. *City of East St. Louis*, 78 Ill. 548.) It is also said in Black on the Interpretation of Laws (p. 112): "The presumption being, as just stated, against any intention to make unnecessary changes in the laws, it follows that there is also a presumption against repeals by implication. Every new statute should be construed in connection with those already existing in relation to the same subject matter, and all should be made to harmonize and stand together, if that can be done by any fair and reasonable interpretation, and if the new act does not expressly declare the repeal of an earlier statute it will not be construed as effecting such repeal, unless there is such a repugnancy or conflict between the provisions of the two acts as to show that they could not have been designed to remain equally in force,"—citing authorities. It is true that a subsequent statute which is evidently intended by the legislature as a substitute for a former one will operate to repeal such act even though the latter one is not repugnant to the former; but that rule can only apply where the intention to do so clearly appears. We are at a loss to perceive how it can be said that any such intention is here manifested. Giving the language of the latter statute its plain, ordinarily accepted meaning, no such intention is shown.

It is said in the argument of counsel for appellee that there is no more reason for presuming that it was the intention of the legislature to enlarge the powers of municipalities being limited by special charters to the collection of less than two per cent, than that it was the intention to limit the power of appellant and like municipalities to levy and collect no more than two per cent. We think, however, that a moment's reflection will show that this position is unsound. It being a fact (of which we will take judicial notice) that there are cities and villages in the State organized under special charters limiting the power to assess and collect taxes at a much lower rate than two per cent, the language of this statute is perfectly consistent with an intention to enlarge the powers of those municipalities, and thus show the object of the legislature in adopting the additional words. But we have already seen that the affirmative language here used is consistent with the powers conferred by the former act, and therefore indicates an intention not to limit or take away those powers.

It is also contended that the object of the legislature in passing this act was to enforce uniformity with the various towns and cities and municipalities throughout the State to assess and collect a uniform rate of taxes, as well as to require uniformity in the manner of making such assessments and collections. But we find no sufficient evidence of such an intention,—at least no such intention is so clearly shown as to justify the court in holding that the purpose was to repeal the provisions of this special charter.

In this connection it is a consideration entitled to weight that the powers and duties of the town of Cicero, as a municipal corporation, are greater than those of ordinary towns, cities and villages. It is, in fact, a town under township organization, as well as possessing the powers of cities, villages and towns. Ordinarily, cities and villages located in towns under township organiza-

tion have three bodies with powers of taxation: The city or village, with power to levy two per cent; the officers of the township, with power limited only as to the purposes for which they may be levied; and highway commissioners, with power to levy six-tenths of one per cent. These several taxes may be levied upon all the property of the city or village. In this town, by its charter, the taxes for the three several purposes above named are all under one head, and designated as "town tax." It thus appears that there is good reason why the legislature should not have intended to bring this town within a uniform rate of taxation with all the other cities, villages and incorporated towns in the State.

It is also reasonable to assume that the legislature, in passing this act of 1897, may have thought that the limitation upon the power of cities and villages acting under special charters to collect less than two per cent, some being limited to the low rate of one-half of one per cent, rendered them unable to raise sufficient funds for carrying on their municipal affairs, and therefore it was wise and proper to enlarge those powers. But it does not follow that it should at the same time have concluded that this municipality, with unlimited powers of taxation under the peculiar provisions of its charter, would so abuse that power, by levying and collecting more taxes than were reasonably necessary, as to make it wise and proper to take away that power. At all events, we are of the opinion that the plain provisions of this statute, tested by the rules of construction above referred to, are in no sense a repeal of the provisions of the special charter of the town of Cicero as to its rate of taxation.

The circuit court erred in denying the writ and dismissing the petition of appellant, and its judgment will be reversed and the cause remanded, with directions to proceed in conformity with the views herein expressed.

*Reversed and remanded.*